DECISION
Plaintiff-appellant, Charles R. Evans, appeals from the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying plaintiff's motion for shared parenting and finding plaintiff in contempt of court.
On April 25, 1996, plaintiff filed a complaint for divorce against defendant-appellee, Christina K. Evans. Plaintiff's complaint alleged that the parties were married in October 1993, and that one child, Hanna Maria Evans, was born as issue of the marriage on June 12, 1994. On May 6, 1996, defendant filed an answer and counterclaim.
On June 4, 1996, plaintiff filed a motion for shared parenting. By entry of the trial court filed on June 19, 1996, defendant was designated as the temporary residential parent and legal custodian of the minor child, and plaintiff was ordered to pay temporary child support.
By order of reference, the trial court submitted the matter to a magistrate for a hearing on allocation of parental rights and responsibilities. By entry filed April 9, 1997, the trial court ordered the appointment of a guardian ad litem for the minor child. The magistrate conducted a hearing, beginning January 20, 1998, regarding various matters including plaintiff's motion for shared parenting. On March 30, 1998, the guardian ad litem filed a report, recommending that defendant be designated as the residential parent and legal custodian of the child.
The magistrate filed a decision on June 15, 1998, overruling plaintiff's motion for shared parenting and finding that it was in the best interest of the child that defendant be designated the residential parent and legal custodian. The magistrate also ordered plaintiff to pay child support in the amount of $759.40 per month. The trial court filed an entry adopting the magistrate's decision. Plaintiff subsequently filed objections to the magistrate's June 15, 1998 decision.
On June 19, 2000, defendant filed a motion for contempt against plaintiff. In an accompanying affidavit, defendant averred that plaintiff had failed to comply with a May 10, 2000 order of the trial court, in which the court had ordered plaintiff to return certain documents to the court's financial expert and to provide additional financial information and documentation to the expert.
On July 27, 2000, the trial court entered a judgment entry/decree of divorce. In its decision, the trial court overruled plaintiff's objections to the magistrate's decision and incorporated the magistrate's decision as it related to the allocation of parental rights and responsibilities. The trial court filed a nunc pro tunc judgment entry/decree of divorce on December 23, 2000.
On December 22, 2000, the trial court conducted a hearing on defendant's motion for contempt. By entry filed December 22, 2000, the trial court found plaintiff in contempt and sentenced plaintiff to ten days incarceration in the Franklin County Jail.
On appeal, plaintiff sets forth the following two assignments of error for review:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT DENIED MR. EVANS' MOTION FOR SHARED PARENTING.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT FOUND MR. EVANS IN DIRECT CONTEMPT.
Under his first assignment of error, plaintiff asserts that the trial court erred in denying his motion for shared parenting. More specifically, plaintiff contends that the court erred and failed to consider relevant evidence when it denied him the opportunity to cross-examine the guardian ad litem.
The record indicates that, at the beginning of the January 20, 1998 hearing before the magistrate, the guardian ad litem, Lora Cleary, informed the magistrate that plaintiff had named her as a witness. Cleary further indicated, however, that it was her understanding that plaintiff would not be calling her as a witness. In response, plaintiff, who was representing himself pro se at the hearing, stated, "[t]hat's correct." (Tr. Vol. I, at 9.) During plaintiff's case-in-chief, plaintiff declined to question the guardian ad litem as to her investigation.
Near the close of the hearing, but before closing arguments were submitted, plaintiff inquired of the magistrate whether he would have an opportunity to question the guardian ad litem regarding the guardian's report. The magistrate noted that plaintiff had closed his case without having called the guardian ad litem as a witness. At that time, the guardian ad litem raised an objection to being called as a witness, citing a potential "conflict in the role between guardian and attorney." (Tr. Vol. XVI, at 53.) The magistrate declined to allow plaintiff to conduct an examination of the guardian ad litem, but the magistrate ruled that closing arguments would be delayed until all parties had a copy of the guardian ad litem's report. Plaintiff asserts that it was error for the court to not allow him to cross-examine the guardian ad litem where the guardian conducted an investigation and submitted a report based on the investigation.
In Crosby v. Crosby (June 15, 1993), Franklin App. No. 92AP-1455, unreported, this court held, in part:
 Loc.R. 15 of the Court of Common Pleas of Franklin County, Domestic Relations Division, permits a domestic court to appoint a guardian ad litem to represent the best interest of the child in a child custody or divorce proceeding. A guardian ad litem performs the role of the child's advocate, calling and cross-examining witnesses in an effort to elicit evidence that will aid the court in making a custody decision in the child's best interest.
 R.C. 3109.04(C) permits a trial court to appoint an investigator in a child custody proceeding to conduct "* * * an investigation * * * as to the character, family relations, past conduct, earning ability, and financial worth of each parent * * *" and to report to the court on its findings. Where a court requests such an investigation and report, "* * * the investigator shall be subject to cross-examination by either parent concerning the contents of the report." Id. * * *
In the present case, the record indicates that the guardian ad litem "in essence performed the function of both [the child's] advocate and an investigator for the court." Crosby, supra. Specifically, the guardian conducted an investigation and sub-mitted a recommendation to the trial court regarding the issue of the child's best interests. Further, during the trial of this matter the guardian participated in the examination of witnesses. Thus, normally under such circumstances, the trial court "should have provided the parties an opportunity to cross-examine the guardian ad litem under oath concerning the contents of her reports." Id.
As previously noted, however, at the beginning of the hearing, plaintiff, who presumably knew that the guardian ad litem would be submitting a report, indicated to the magistrate that he would not be calling the guardian as a witness. Further, the record indicates that the guardian participated in the hearing and therefore was available for questioning. At the time of plaintiff's request to question the guardian, the magistrate noted that plaintiff had concluded his presentation of evidence, and thus the magistrate appears to have denied the request in part on waiver grounds.
Upon review, we find that, even assuming plaintiff had not waived his right to cross-examine the guardian ad litem regarding the report, plaintiff cannot show prejudicial error from the record in this case. In Smith v. Smith (Dec. 28, 1999), Franklin App. No. 98AP-1641, unreported, the plaintiff made a similar contention that the trial court erred in not allowing the cross-examination of a guardian ad litem, arguing that the trial court "relied almost exclusively on the guardian ad litem's report in its decision not to adopt a shared parenting plan." This court, while finding that the trial court "should have allowed the guardian ad litem to be cross-examined," based on the language of R.C. 3109.04 and this court's opinion in Crosby, supra, nonetheless found that plaintiff had failed to show prejudicial error. Id. Specifically, the court in Smith, supra, held in relevant part:
 * * * [T]he trial court considered the guardian ad litem's report as only one of several factors in rejecting plaintiff's proposed shared parenting plan. As the court explained, "[t]he most telling evidence for the Court was the testimony of the Plaintiff's sister, Tracy Edwards. It appears to the Court that the parties might have been capable of forging a shared parenting plan if left alone by Mrs. Edwards and her husband." The trial court further observed that the parties do not have the ability to communicate and make joint decisions regarding Taylor, an observation independent of the guardian ad litem's report. In addition, defendant testified she did not think shared parenting would ever work, noting that communications between her and plaintiff were strained due to his family's influence. Indeed, the guardian ad litem's report itself in large part is based on the guardian's observations at trial. Given that the trial court also gave counsel an opportunity to submit closing arguments which included objections to the guardian's report, we cannot find prejudice on this record in the trial court's refusal to permit cross-examination of the guardian ad litem. * * *
Similarly, in the instant case, despite plaintiff's contention that the court relied significantly on the guardian's report, including adopting the guardian's visitation recommendation, the record indicates that the guardian's report was "only one of several factors" considered in the magistrate's finding that plaintiff's motion for shared parenting was not in the best interest of the minor child. Crosby, supra. We note that the hearing before the magistrate was lengthy, consisting of seventeen days of testimony, and resulting in sixteen volumes of transcripts totaling more than 3,300 pages. The magistrate, in addition to noting findings by the guardian ad litem, cited extensively from the report of Dr. John Tarpey, a psychologist. Specifically, the magistrate's decision quotes the following findings from the psychologist's report:
 Mr. Evans' personality profile (MMPI-2) * * * suggested the excessive use of repression and denial. * * * Mr. Evans' clinical scales suggest that the projection of blame and hostility may be prominent features. * * *
 In a letter dated September 18, 1997, Dr. John Gary indicated to Dr. Tarpey that he saw both Charles and Christina Evans in January of 1995 for an initial session related to potential marital counseling[.] * * * Dr. Gary's impressions of Mr. Evans were that he was aggressive, hostile, demanding, demeaning and defensive and he noted that Mr. Evans expressed guarded and suspicious attitudes about being in therapy. Dr. Gary also explained that it was his belief that Mr. Evans' affective range was limited to anger and suspicions. He also exhibited a heightened state of anxiety and admitted to losing control and stated that he might have hit her "but she provokes it". * * * Dr. Gary believed Ms. Christina Evans maintained a victim's stance throughout his involvement with her * * *.
 Dr. Tarpey reported that during a telephone conversation with Ms[.] Malta on October 13, 1997, Ms. Malta indicated she had seen Mr. Evans for two sessions in May 1996. * * * Ms. Malta found Mr. Evans to be emotionally labile, very angry and quite ready to express his beliefs that things were being done to him which were very unfair and that his wife had lied about. * * *
 As reported by Dr. Tarpey, Mr. Charles Evans' evaluation clearly provided evidence of an underlying hostility which he would likely relate to his treatment throughout this marital breakup. * * * This posture very likely has evolved throughout his lifetime and will contribute to difficulties in sharing the control necessary to make mutual decisions in any of his relationships.
* * *
 The findings from these evaluations suggest a level of psychological disturbance for both Ms. Christina Evans and Mr. Charles Evans which likely contributes to the ongoing conflict throughout these divorce proceedings. Quite obviously these conflicts and the inability of Mr. and Mrs. Evans to cooperate for the sake of their daughter have had a negative impact on Hannah * * *. * * *
The magistrate noted that Dr. Tarpey, "in his concluding statement in his written report and in his testimony indicated that the key to a shared parenting schedule for these parties with their daughter, Hannah, is `totally dependent upon her parents' ability to move beyond their own conflict and place her needs in the forefront.'" Dr. Tarpey testified at the hearing and opined that, based upon his observations of the parties, he did not believe that the parties could make decisions jointly or cooperate in making decisions related to the child. The magistrate concluded from the evidence presented that, "[i]t is evident that neither party has been able to move beyond their conflict to put Hannah's needs before their own."
The magistrate made findings that the history of the parties during the pendency of the divorce proceedings "indicates that neither of these parties is more likely to honor and facilitate visitation and companionship rights approved by this court." The magistrate noted that "[b]oth parties have willfully and continuously denied the other parent his or her right to visitation under the parties' temporary orders." In considering the ability of the parents to cooperate and make joint decisions, the magistrate made the following findings independent of the guardian's report:
 These parents do not have any ability to cooperate and make decisions jointly with respect to their child Hannah. The level of animosity between these parties is such that even contact between them at the exchange of their child for visitation or at a public event which they both attend produces conflict and friction that causes emotional turmoil for Hannah. Plaintiff's behavior clearly indicates that he continues to satisfy his needs or desires to control Hannah's life to the exclusion of Hannah's needs. Plaintiff is unwilling to make any accom-modation to work with Defendant unless he obtains what he believes to be his inherent right as a father — equal time with his child. But it is equally clear that the parties' total inability to cooperate on behalf of Hannah make shared parenting of Hannah impossible and potentially detrimental to Hannah's psychological and emotional well being.
The magistrate also found that "[t]he antagonism and hostility between these parties has escalated to a level that prohibits their ability even to be tolerant of each other. Their behavior in the courtroom suggests that they have lost respect for each other not only as individuals but as parents." Regarding the contentious nature of the parties' relationship, we note that at one point during the hearing the magistrate delayed the taking of evidence until a sheriff's deputy could be summoned to the hearing room.
Similar to the facts in Smith, supra, defendant testified that she did not believe that shared parenting would ever work. During the hearing, defendant related incidents of physical and verbal abuse against her by plaintiff, including death threats. The magistrate noted the following regarding testimony presented at the hearing:
 * * * Based upon the testimony and evidence presented at this trial the Magistrate finds that there is the potential for domestic violence and spousal abuse. Plaintiff admitted occasionally having a bad temper but never intentionally striking out. He has grabbed Defendant, bear hugged her, held her down on a chair and pushed her away from him. Plaintiff physically restrained Defendant during an argument after being scratched by Defendant, while he was threatening to remove the minor child from the home. Plaintiff grabbed the Defendant and held her down on the floor by the neck. Plaintiff's personality profile indicates that "He very likely possesses strong underlying anger and resentment * * *[.] For such individuals anger is typically ventilated through judgment but if pushed into a corner he could explode and become violent." * * *
The magistrate related that "[p]laintiff's courtroom demeanor was marked by frequent bouts of crying while he questioned witnesses and outbursts of laughter at seemingly inappropriate times." The magistrate noted, that during the questioning of defendant, plaintiff "became belligerent toward her, made harassing comments and resorted to name calling." The magistrate concluded that plaintiff "showed definite characteristics, over this protracted trial, which indicate a potential for domestic violence and spousal abuse."
Similar to the facts of Smith, much of the guardian ad litem's report was based on the guardian's observations of testimony presented at the hearing. Specifically, in discussing the applicability of the statutory factors under R.C. 3109.04, the report of the guardian contains numerous references to the testimony presented at the hearing, including evidence that the minor child's enrollment to preschool at Village Junior Academy was terminated because of plaintiff's behavior in disrupting the child's classes. Also similar to Smith, we note that the magistrate specifically delayed closing arguments to allow the parties the opportunity to submit their arguments after the guardian's report was submitted.
In Crosby, supra, although this court held that the trial court should have provided the parties an opportunity to cross-examine the guardian, this court found no prejudicial error from the court's failure to do so, noting that the report offered by the guardian did not contain evidence that had not otherwise been submitted to the court during the trial. This court further found that "the independent analysis and consideration which the trial court gave to the issue of child custody indicates that the court's custody decision would not have been different had the guardian ad litem's testimony been excluded or had defendant been permitted to cross-examine the guardian ad litem." Id. Upon review, we similarly find, based upon the circumstances of this case, that the court's decision to deny plaintiff's motion for shared parenting would not have been different had plaintiff been permitted to cross-examine the guardian. Accordingly, we find no prejudicial error to plaintiff as a result of the court's failure to allow cross-examination of the guardian ad litem.
Based upon the foregoing, plaintiff's first assignment of error is overruled.
Under his second assignment of error, plaintiff asserts that the trial court erred in finding him in contempt of court. Specifically, plaintiff argues that the trial court erroneously found him in direct contempt of court for purportedly failing to comply with a court order to return documents to the court-appointed financial expert. Plaintiff maintains that the alleged misbehavior occurred outside the presence of the court, and thus did not constitute direct contempt.
At the outset, we note that plaintiff indicates in his appellate brief that, at the time of the court's contempt finding, plaintiff was unable to post bond and therefore he served the ten-day sentence imposed by the court. To the extent that plaintiff served the ten-day sentence imposed, his appeal of the contempt finding is moot. See Springfield v. Myers (1988), 43 Ohio App.3d 21, 25 (appeal of contempt finding moot where appellant had completed his sentence for contempt and appellant failed to establish that he will suffer some collateral disability from such judgment).
As part of his relief requested, plaintiff seeks an order from this court ordering the trial court to vacate the $200 fine imposed. A review of the record of the December 22, 2000 contempt hearing before the trial court indicates that, following the presentation of evidence, the court made an oral pronouncement that plaintiff was in contempt, and that plaintiff was to serve ten days in jail and pay a $200 fine. However, a review of the trial court's judgment entry, filed December 22, 2000, fails to indicate that the court's finding of a fine was journalized; rather, the entry only sets forth the imposition of a ten-day jail sentence to be served in the Franklin County Jail. Thus, the record in this case does not confirm that the trial court ever imposed a $200 fine via an entry (nor does the record reflect that plaintiff has ever paid a fine). A court of record speaks only through its journal and not by oral pronouncement. Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus. In the absence of a journal entry addressing the issue of a fine, an oral pronouncement of a trial court does not present this court with a final order. Lamberjack v. Gyde (1993), Ottawa App. No. 92-OT-034, unreported. Accordingly, plaintiff's second assignment of error is rendered moot.
Based upon the foregoing, plaintiff's first assignment of error is overruled, plaintiff's second assignment of error is rendered moot and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations are hereby affirmed.
BOWMAN and LAZARUS, JJ. concur.